May it please the Court, Nicholas Markey on behalf of the petitioner Konstantin Manzar. You have observed 20 minutes to the rebuttal. I note that we are scheduled for 20 minutes. However, I left... That is not necessarily what you need, however, in this case. That is correct, Your Honor. I have never been able to speak 20 minutes to this Court on my own. So I just left that real quick. Your Honors, this is a case where I guess it would appear that the calendar is addressing crimes and what they constitute under the INA for removability. Mr. Manzar entered the United States in 1999 as a derivative of his mother's application on a fiancé visa petition and was granted status. In 2000, he was convicted of felony harassment. In January 2003, he was placed into removal proceedings. The government alleged that he was removable for a crime of moral turpitude, that being the felony harassment crime. In 2004, Your Honor, I moved to terminate, arguing that the felony harassment was not a crime of moral turpitude. After extensive litigation, the immigration judge found that it was a crime of moral turpitude. As the Court is aware, the BIA affirmed that on its own reasoning also. As noted in the administrative record, the BIA decision was not a summary decision but was instead an analysis of each argument that was presented. As to the whether felony harassment constitutes a crime of moral turpitude, Your Honors, we would submit to this Court that it does not constitute a crime of moral turpitude. But did you raise that issue? Pardon? Did you raise that issue before the Board? Did you exhaust the moral turpitude issue below? Yes, we did, Your Honor. We raised it independently before the I.J. It was then re-again raised before the BIA where we addressed the I.J.'s decision and the judge erred when he held it was a crime of moral turpitude. Well, there were two issues, right? One was the aggravated felony and the other one was the crime of moral turpitude. The aggravated felony you're charging, Your Honor, was withdrawing. We always proceeded on merely a crime of moral turpitude because there wasn't a crime of moral turpitude or more. While I would concede that it was a Class C felony, it was not an aggravated felony pursuant to concessions by the government back in 2003. So why wouldn't the Ajami case and its logic coupled with what your client signed basically tell us the answer to whether this is a crime of moral turpitude? Because if you look at the statute, Your Honor, under RCW 9A.46.20, the felony harassment statute, the statute states in order to be guilty of such a crime, you have to, without lawful authority or knowingly, threaten. If you look at Ajami and the cases cited by the government, those cases say if you have an intentional harassment, an intentional threat, then it is a crime of moral turpitude. In the case of Barr, Your Honor, we don't have intent. There is no intent in the statute. There is no intent in the conviction records. There is no intent in the guilty plea. The government goes on to cite that, and I agree under the modified approach to look at the charging document and possibly the guilty plea. If you look at the guilty plea, Mr. Manzar pled to knowingly harassing an individual, knowingly threatening. There is no intent. This guilty plea statement, which is cited in the government's brief, does not include intent. There is no intent in the statute. Therefore, it cannot be a crime of moral turpitude. The government relies on an Eighth Circuit case, again, citing that these were terrorist threats made. Again, that is an intent issue. If the Court looks to a matter of Perez in denying that assault three was a crime of moral turpitude, Perez and the Board address the issue of intent, saying as long as there is not intent, that is an intent. Stated in the statute, it cannot be a crime of moral turpitude. And that's what we're arguing. The government and the IJ was incorrect when he said that it was a crime of moral turpitude because it focused on knowingly. I concede that the statute says knowingly, but it does not say intent. And therefore, it is not a crime of moral turpitude. Kennedy. Could you relate to the facts? I'm having trouble figuring out exactly how there's an absence or could realistically be an absence of intent. Your Honor, intent isn't required. If intent were required under the statute, you would have to prove it. You could say, well, how could you not prove a threat is intentional? Our legislative minute indicated it did not. In this case, a defendant, it would make it overly broad because, in this case, I guess you would have to intend to kill the person. Here, it was a threat. Intend to kill or intend to threaten? No, it was a knowing. But knowingly is not the same. It's not the same as intentional. It is not the same as intentional. Well, I understand as a law school, you've got these different levels. But when as Alvarez says, let's get real here, and I think get real in this sense, I'm still troubled to exactly how can someone be found guilty of committing this offense knowingly and still not have element of intent there? Especially when it involves a threat. Your Honor, I can't off the top of my head. I'm sure I could think of something because I tried felony harassment cases. And whenever the issue comes up with intent, it's not an issue. It's did you knowingly make the threat? So a lot of that comes with the written things. Here, as there is no intent and requirement in the statute, it is not a crime of moral interpretation. How you would go about it? Do you think that Duane S. Alvarez's teaching applies here? It's a somewhat different context, but it's talking about it's not supposed to be an exercise to see how theoretically you can come up with a case that fits one and not the other. And if I apply that logic to this, I'd say, well, is it meaningful to say you can have this offense and still not have the requisite intent for a crime of moral turpitude? On this crime, I've got to say I'm having a little trouble seeing how that really is a realistic possibility. I guess, Your Honor, my position would be I don't think you can the case law seems to indicate without the exception of Alvarez. You can't look behind it. You can't look at the police reports for Mr. Manzar's cause, what he did in his actions to plead guilty or be charged. We are merely left with the judgment of conviction and the information, and I believe there's even a guilty plea in the record. And that's all we can look at. And that's what I would say that the Court is limited to looking at. The fact that we can't wrap our minds around the fact that how can you cause a threat without intent, I think that goes beyond. I think there's more things that are holding into things that are outside the record. And what we have from the record here is this. Well, but what Duane, as Alvarez says, okay, the obligation, I'm going to translate it to this context, if it does apply, and I'm not saying necessarily it does apply, but in this context, the obligation would be on the petitioner to demonstrate that this is more than a hypothetical exercise, that in fact you could have someone who lacks the requisite intent in fact be charged and convicted of this crime by pointing either to his own case or to some other case. And Duane, as Alvarez is a product of appellate judges, and I've heard complaints about how when you get down to the field, it's not quite so easy to point to reported cases, but you've got to figure out some way to show that, yes, this is more than a theoretical dancing on the head of a pen. And my response would be, Your Honor, if you're saying, well, the burden now is switched to the petitioner to prove somehow it doesn't fit, I would cite the courts of the lengthy cases that say the burden is on the government to prove the movability and the charge. Therefore, they must prove it. I think to make the respondent or the alien prove that he didn't have the requisite intent would overturn all that case law. It's established that the government must prove it, not the petitioner or the alien. Well, let me just read from Duane S. Alvarez. It requires a realistic probability, not a theoretical possibility, that the state would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic possibility, an offender, and that's where I've had to translate, and I understand the point you've made, an offender, of course, may show the statute was so applied to his own case, but he must at least point to his own case or other cases in which the state courts did, in fact, apply the statute in the special non-generic manner for which he argues. And I've heard the distinction you've drawn. I think it's a realistic one. But I still have to say I'm having trouble getting my head around the idea that this action could have been unintentional. And I would concede hypothetically that it could be difficult. I can't think of a way. All we know is that in the record before us is that Mr. Manzar threatened to kill another individual under the felony harassment statute. Now, the question is if he doesn't have the intent, how did he do it? I don't know because we don't have those facts in this record, and therefore. But we can't even hypothetically figure out how. Exactly. So it would be one thing to say, well, we don't have the facts, so we can't figure it out, but it's like intellectual impossibility is what we have. Therefore, it collapses in this case, it seems to me. And I would agree with the Court on that. And what I – what the government and I must look at is merely what is in the record, and I'm saying there's no intent required under the felony harassment statute, and therefore, it's not a crime of moral turpitude based on the case law, even the case law cited by the government. Now, as to the other issues, Your Honor, we will submit on those issues. Thank you. May it please the Court. My name is Jeffrey Lies on behalf of the Respondent. In this case, Mr. Manzar, by virtue of his conviction for felony harassment, is removable, and he's failed to demonstrate eligibility for any of the relief which he sought. Mr. Manzar was convicted of felony harassment for threatening to kill somebody. As has been discussed, I mean, this is not a case which has been cited by the Petitioner where, you know, he knowingly forges a shipping document. It's not a case in which, you know, he threatens somebody's, you know, he's going to defile somebody's reputation or something like that. He threatened to kill somebody. This is clearly an act which is, you know, vile, depraved, base, and contrary to accepted moral standards. I would further argue that, as has been discussed, it's essentially impossible to knowingly threaten to kill someone without contending to threaten to kill someone. Therefore, I would argue that the Petitioner has, in fact, been charged or convicted of a crime of moral turpitude according to the Board's decision in a matter of autonomy which found that the intentional transmission of threats or stalking was, in fact, a crime of moral turpitude, or making terrorist threats with the intent to terrorize was a crime of moral turpitude. I guess what I divine from Mr. Marchese's argument is that he said knowingly is not intentional and, therefore, even if you knowingly threaten somebody, you don't do it intentionally. Therefore, it's not a crime of moral turpitude. Could you just respond to that? I would argue that if you knowingly threaten to kill somebody, you have the intent that you are threatening to kill somebody. That, I mean, maybe it's wordplay. Maybe there's actually a distinction. I cannot imagine how there could be a distinction that if you're threatening to kill somebody, you knowingly threaten to kill somebody, that you do not intend to threaten to kill somebody. If there's a distinction, there may be one that I cannot think of one. Moreover, Mr. Manzar has failed to demonstrate eligibility for any of the brief which he sought. He applied for asylum, withholding and protection against the Convention against torture. As a threshold matter, he did not file his asylum application within one year of his arrival, and, therefore, this Court lacks jurisdiction to consider whether or not he established exceptional circumstances. Moreover, the immigration judge looked at his circumstances and found that even if he did not have to file his application within one year because he arrived with status, he nevertheless did not – once he lost his status, he did not file that application within a reasonable period of time. He's also failed to demonstrate that he would, in fact, be persecuted if returned to Russia. Mr. Manzar fears prosecution, not persecution, if returned to Russia based on his failure to serve in the mandatory military service in Russia. There are certain circumstances where prosecution can be persecution, but they have not been demonstrated in this case. For example, if the Russian government was going to pretextually prosecute him as a way of, you know, in essence, prosecuting him, yes, that could possibly be one. If there was some kind of disproportionate prosecution against him, that could possibly be a situation in which it would be a case, but not in this case. And furthermore, while he claims that he does not want to return to Russia and fight in the military because he's in favor of Chechen independence, there is no evidence whatsoever in the record that the Russian military or the Russian government would, in fact, prosecute him, whether it would in any way, you know, prosecute him or persecute him based on his belief that Chechens should become independent. Furthermore, there is no evidence whatsoever that the Russian military or the Russian government would torture him based on his beliefs for any reason whatsoever. Therefore, he has failed to demonstrate eligibility for that kind of relief. And finally, the immigration judge did not err in denying Mr. Manzar's request for a continuance to apply for adjustment of status. At the time of the hearing, when he put forth the request for the continuance, he was not eligible for adjustment of status. His mother, who was his sponsor, had just, I believe it was only a couple of weeks earlier, filed the I-130, and it was not, in fact, approved at the time of the hearing. Moreover, there was no evidence that a visa was available at that time or would be in the immediate future. The immigration judge looked at the visa bulletin and it said that at the time Mr. Manzar's I-130 had been filed, which I believe was 2004, that visas were only becoming current for people who had filed prior to 1998. In essence, it would take roughly six years, if ever, before Mr. Manzar's visa would become current. Basically, what Mr. Manzar was asking for was an indefinite continuance. And this Court should find that a request for an indefinite continuance, if it's denied, should not be an abuse of discretion. This Court, in a case called Gonzales v. INS, found that the denial of a continuance based on unpredictable events was not an abuse of discretion. The Fifth Circuit, in a case called Witter v. INS, has found that a request for an indefinite continuance, if denied, is not an abuse of discretion. Congress intends for removal proceedings to be expeditious. And to essentially allow a case to languish forever, possibly, until someday when a visa becomes current, is not within the scope of – is not in concurrence with congressional intent. If there are no further questions, based on the foregoing, the Respondent respectfully requests that the petition for review be denied. Thank you. Very briefly, with regard to the one-year filing deadline, I think that is addressed by the Administrative Record at Page, I believe it's 134. The IJ agreed that Mr. Manzar could file his asylum application, and that was in 2003. And she indicated that in her decision in September 2003, her decision was that Mr. Manzar was still in status per se because we had still conceded – or we had challenged the ground of removability, and we did not admit or concede the ground of removability, so it was still an issue. So the IJ ruled that he could proceed with his asylum application. It is our position, Your Honors, that he has established an asylum claim. He has submitted evidence that supports that. Thank you. Thank you. The case just argued is submitted. We thank you for your arguments. We'll now turn from immigration to insurance issues.
judges: McKeown, Clifton, Schwarzer